

28 Liberty Street, 30th Floor • New York, NY 10005
Telephone: (212) 300-0375 • Facsimile: (212) 481-1333 • www.fslawfirm.com

February 26, 2021

**VIA CM/ECF**
Hon. John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007

>    Re:    *Tuy v. Major Cleaning, Inc., et al.*, No. 1:20-cv-05230-JPC

Dear Judge Cronan,

We represent Plaintiffs in the above referenced matter. We, along with counsel for Major Cleaning, Inc. and Adelson De Souza (together "Defendants" or "Major Cleaning") (together with Plaintiffs, "the Parties") jointly write this letter to respectfully request judicial approval of the Parties' settlement agreement ("Agreement") attached hereto as **Exhibit ("Ex.") A.** The Agreement resolves the claims of the named Plaintiff Juan Gabriel Tuy Ruiz and opt-in Plaintiff Luis Alfredo Plato Elias (together "Plaintiffs") for the total amount of Seven Thousand Five Hundred Dollars ($7,500.00), inclusive of attorneys' fees and costs. For the reasons outlined below, the Parties submit that the Court's approval is warranted.

## BACKGROUND & PROCEDURAL HISTORY

Named Plaintiff Juan Gabriel Tuy Ruiz filed this action on July 8, 2020 and opt-in Plaintiff Luis Alfredo Plato Elias filed a consent to join the action shortly thereafter. *See* ECF Nos. 1, 3.[1] Plaintiffs allege that Defendants operate a cleaning service company that provides overnight cleaning services to well-known New York City restaurants. ECF No. 1 ¶ 2-4.

Despite being non-exempt employees, Plaintiffs allege that Defendants paid them and others on a day/shift rate basis and failed to pay overtime compensation for all hours worked over 40. ECF No. 1 ¶ 7, 63. Depending on the applicable minimum wage rates in effect, Plaintiffs also alleged that their pay rates at times fell below the minimum wage depending on the yearly applicable minimum wage rates. ECF No. 1 ¶ 64. Named Plaintiff also alleged that he was retaliated against for complaining about the lack of overtime pay. *See* ECF No. 1 ¶ 105, 110.

Defendants filed their Answer to the Complaint on July 20, 2020 and Amended Answer to the Complaint on August 12, 2020, both of which denied liability. *See* ECF Nos. 9, 11.

---

[1] The opt-in Plaintiff Timotea Patzan Ajbal was dismissed without prejudice due to her death that occurred prior to this lawsuit. *See* ECF No. 17.

Fitapelli & Schaffer, LLP
February 26, 2021
Page 2 of 6

On September 1, 2020, Major Cleaning, Inc. filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey.[2] This action was subsequently stayed by Judge Caproni against the corporate defendant due to this bankruptcy petition. ECF No. 16. On September 14, 2020, the action against Mr. De Souza was temporarily stayed in anticipation of his bankruptcy petition. *See* ECF No. 18. Mr. De Souza likewise filed for individual Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of New Jersey on November 5, 2020.[3]

During the pendency of these bankruptcy cases, Counsel for the Parties participated in numerous telephone conversations relating to potential resolution of the wage claims at hand in this matter. Plaintiffs' Counsel was able to review the underlying finances of the Defendants from the filings in the bankruptcy matters. Moreover, Plaintiffs' Counsel participated in the Creditor's Meeting for the corporate Defendant on October 7, 2020, which included questioning Mr. De Souza who appeared on behalf of the corporation regarding the business's past, present, and expected future finances. Utilizing this information, the Parties were able to negotiate a settlement in principle that would resolve the claims in this matter.

On December 9, 2020, the Parties submitted a joint letter motion informing this Court the Parties had reached an agreement in principle, that Mr. De Souza's bankruptcy petition was dismissed, and that the corporate defendant's bankruptcy petition would be dismissed in the following weeks. Specifically, as a result of the COVID-19 pandemic's impact on their business, the Defendants were not able to formulate a plan to re-pay their creditors and therefore they moved to dismiss the bankruptcy petitions. The Bankruptcy Court dismissed the corporate bankruptcy petition on January 7, 2021.

## THE SETTLEMENT

As a result of extensive arm's length negotiations, the Parties were able to reach a total settlement amount of Seven Thousand Five Hundred Dollars ($7,500.00) that takes into account the very real concerns regarding collectability. The total allocation of the Settlement Agreement is as follows:

- Two Thousand Five Hundred Dollars ($2,500.00) to Plaintiff Juan Gabriel Tuy Ruiz,
- Two Thousand Five Hundred Dollars ($2,500.00) to Plaintiff Luis Alfredo Plato Elias, and
- Two Thousand Five Hundred Dollars ($2,500.00) to Fitapelli & Schaffer, LLP, representing attorneys' fees and costs.

*See* **Ex. A** ¶ 1. The Settlement Agreement will provide these payments on a six-month installment plan basis, with Plaintiffs' Counsel receiving all pre-dated checks seven days after Court approval.

In the event Defendants default on any of their payment obligations and fail to timely cure as per the Settlement Agreement terms, the Parties agree that Plaintiffs shall be entitled to enter a

---

[2] *In re Major Cleaning Inc*., No. 20-20256-VFP (D.N.J. Bank. Sept. 1, 2020).
[3] *In re Adelson De Souza*, No. 20-22429-VFP (D.N.J. Bank. Nov. 5, 2020).

Fitapelli & Schaffer, LLP
February 26, 2021
Page 3 of 6

judgment by Affidavit of Confession of Judgment without further notice against Defendants in the United States District Court, Southern District of New York in the amount of Eighty Thousand Eight Hundred Six Dollars and Thirty-One Cents ($80,806.31), exclusive of all attorneys' fees and costs, minus any payments made by Defendants. *See* **Ex. A** ¶ 6.[4]

For the reasons below, the Parties respectfully ask that the Court grant the Settlement Agreement.

## THE SETTLEMENT SHOULD BE APPROVED

Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." 796 F.3d 199, 206 (2d. Cir. 2015); *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. Jan. 25, 2012); *Mosquera v. Masada Auto Sales, Ltd.*, No. 09 Civ. 4925, 2011 WL 282328, at *1 (E.D.N.Y. Jan. 25, 2011). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good as a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019).

The court in *Wolinsky* set forth the following criteria for determining whether a proposed settlement is fair and reasonable: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335. Based on the above criteria, the proposed settlement was achieved after arm's-length negotiations between experienced counsel. Therefore, the settlement is fair and should be approved.

### Factor 1: The Range of Recovery

Factor one weighs in favor of approval, as the Settlement represents a fair compromise of Plaintiffs' potential recovery considering the substantial risks of collection. Based on Counsel's calculations, Plaintiffs' range of possible FLSA recovery was between $0.00 and $54,625.41. Specifically, Plaintiff's damages are comprised of base FLSA minimum and overtime wages of $54,625.41. The $7,500 settlement fund represents a 13.73% recovery of Plaintiffs' FLSA base owed wages.[5] While Plaintiffs' Counsel acknowledges this is on the lower end of what can be

---

[4] The executed Confession of Judgment is in Plaintiff's Counsel's possession but is not being filed on CM/ECF with the settlement agreement. The Parties are happy to provide it to the Court for an *in camera* review if necessary.

[5] Additionally, because Mr. Tuy's base minimum and overtime damages are slightly less than Mr. Plato's, Counsel Mr. Tuy slightly more than his pro rata share to account for his additional retaliation claims.

Fitapelli & Schaffer, LLP
February 26, 2021
Page 4 of 6

considered a fair monetary result, we submit that the litigation risks discussed below raise this recovered amount to a fair result for this specific case.

### Factors 2 & 3: Avoiding Burdens & Litigation Risk

Factors two and three also weigh in favor of approval. Defendants are willing to enter into this Agreement and forego litigation over disputed issues of law and fact in order to bring an early and cost-effective resolution to this matter, and Plaintiffs are willing to resolve their claims for less than they might receive at trial because they will receive a guaranteed payment and avoid the uncertainty of litigation and trial. Specifically, Defendants have at all times argued that Plaintiffs received all wages legally owed to them, and that they in fact worked fewer daily hours than alleged in the Complaint. Moreover, Defendants denied Plaintiff Tuy's claim of retaliation both on the facts and his ability to claim damages pursuant to *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002). *See* Amended Answer, ECF No. 11 at p. 13.

This case carried with it very real and significant collection risks – specifically, the bankruptcy petitions revealed real concerns regarding the financial health of Defendants. In this regard, in preparation for the Creditor's Meeting, the corporate entity provided updated balance sheets, statement of operations, cash-flow statement, and most recent tax returns. This information showed that Defendants saw a 77.5% decrease in business revenue in 2020.[6] This substantial decline in revenue is consistent with the effect that the COVID-19 pandemic has had on Defendants' business model, which provides overnight cleaning services to middle to high-end New York City restaurants. As restaurants have closed or significantly reduced operations, the need for such overnight cleaning activities has greatly diminished. The most recent P&L statement showed that Major Cleaning would operate at over a six-figure loss for 2020. While the documents submitted did show $250,000 in accounts receivable, at the Creditor's Meeting Mr. De Souza testified under oath that collection of this amount is highly unlikely because its customers (restaurants) have been unable pay their cleaning bills, and there seems no end in sight to such difficulty. Moreover, on November 5, 2020, the Internal Revenue Service (IRS) filed a proof of claim in the amount of $586,980.55 in Mr. De Souza's bankruptcy petition. Plaintiffs' Counsel's public records investigation reveals that Defendants' hard assets to be limited to their personal home. Even if such an asset could be liquidated, the current estimated value appears to be less than the proof of claim submitted by the IRS.

In Plaintiffs' Counsel's opinion and experience, these documents demonstrate a real inability to pay a greater judgment now or in the near future. As a result, these factors greatly weigh in favor of approval. *See, e.g.*, *Navarro Zavala v. Trece Corp.*, No. 18 Civ. 1382, 2020 WL 728802, at *1 (S.D.N.Y. Feb. 13, 2020) (granting approval of the settlement agreement and noting that two corporate defendants have filed for bankruptcy, "potentially complicating collection on a judgment."). These collectability issues are also evidenced by the Agreement's payment installment structure, which would not have been agreed to but for this evidence of real financial

---

[6] Specifically, Defendants gross revenue in 2019 was $1,428,546, and the P&L submitted showed a projected revenue of only $321,567.65 for 2020.

Fitapelli & Schaffer, LLP
February 26, 2021
Page 5 of 6

hardship. *See Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 WL 3791149, at \*2 (S.D.N.Y. Mar. 8, 2016) (issues of collectability weighed in favor of approval where "the sincerity of the parties' concern [was] demonstrated by defendants' consent to a confession of judgment" for breach of the settlement agreement).

### Factors 4 & 5: Arm's Length Negotiation & Experience

Factors four and five also weigh in favor of approval.  Both Plaintiffs' Counsel and Defendants' Counsel have negotiated at arm's length, as evidenced from the length of the negotiations. Moreover, the fact that Plaintiffs' Counsel participated in the Creditor's Meeting, including the questioning of Mr. De Souza, also evidences that this result was the product of an arm's length transaction. Plaintiffs' Counsel has significant experience handling wage and hour matters. *See* **Ex. B**, F&S Qualifications. Defendants' Counsel is also experienced in handling both bankruptcy and wage and hour matters.

### No Red-Flag Issues Are Present In This Settlement

The red-flag issues identified in *Cheeks* are not present here. The agreement does not contain a confidentiality clause and the release is limited to wage and hour claims. **Ex. A**, ¶ 6.  Moreover, as will be discussed below, F&S' requested attorneys' fees are not excessive or constitute more than a one-third contingency interest in the settlement. As a result, Plaintiffs respectfully request that the Court find that the settlement agreement is a "fair and reasonable" compromise of their claims against Defendants and approve the settlement.

### THE COURT SHOULD APPROVE THE
### NEGOTIATED ATTORNEYS' FEES AND COSTS

In accordance with Plaintiffs' professional services-contingency fee agreement with Plaintiffs' Counsel and the consent to join form signed by Plaintiffs, the Agreement provides that Plaintiffs' Counsel will recover $2,500.00, equaling one-third ($2,500.00) of the total settlement of $7,500.00, inclusive of out-of-pocket costs.[7] The amount requested for attorneys' fees is fair and reasonable as it was the fee agreed upon by Plaintiffs in their retainer agreements, and a contingency fee of one-third is sufficient to account for the risks associated with representation. Plaintiffs' Counsel has worked without any compensation to date, and Plaintiffs' Counsel's fee has been wholly contingent upon the result achieved.  *See Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG) (VMS), 2014 WL 6621081, at \*3 (E.D.N.Y. Nov. 21, 2014) (stating that attorneys' fee awards of one third are commonly accepted in this Circuit); *Coleman v. DeFranco Pharmacy, Inc.*, No. 17 Civ. 08340 (HBP), 2018 WL 3650017, at \*3 (stating, "[c]ontingency fees of one-third in FLSA cases are routinely approved in this Circuit.").

Through the date of this filing, Plaintiffs' Counsel has spent approximately 26 attorney hours litigating and settling this action. These hours were compiled from contemporaneous time records maintained by each attorney participating in the case and are reasonable for a case that

---

[7] Plaintiffs' Counsel's costs in this case are $452.83. *See* **Ex. B** ¶ 8.

Fitapelli & Schaffer, LLP
February 26, 2021
Page 6 of 6

has required ample review of financial records.[8] Since November 2014, all of Plaintiffs' Counsel's cases have been taken on pure contingency, including all out-of-pocket costs and expenses. Thus, when Plaintiffs' counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm.  For example, in *Rios et al. v. Louya Corp. d/b/a Jacques Brasserie et al.*, No.  14 Civ. 6800 (GHW) (S.D.N.Y.), Plaintiffs' counsel obtained a verdict of $1,044,512.62 after a five-day trial. However, due to the defendants' bankruptcy filings, the plaintiffs and our firm have recovered less than two percent (2%) of the damages and attorneys' fees and costs awarded to them by the court. This highlights the risks associated with wage and hour matters and illustrates that Plaintiffs' counsel stood to gain nothing in the event the case was unsuccessful.

Moreover, under the "lodestar" method, the Court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the [plaintiff] and then multiplies that figure by an appropriate hourly rate." *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2000). Even under the "lodestar" method, Plaintiffs' Counsel's one-third fee award is more than reasonable. With a lodestar of $11,143.75, Plaintiffs' Counsel's fee in this matter represents a significant discount from their full lodestar amount. *See Scott v. BK Beasts, LLC*, No. 17 Civ. 699 (RRM) (PK), 2018 WL 2088280, at *2 (E.D.N.Y. May 3, 2018) (holding that attorneys' fees were reasonable in a matter where they fell below the lodestar amount even before applying a lodestar multiplier). As such, in reviewing Plaintiffs' Counsel's fees in this matter and the risks involved, it is clear that they are both fair and reasonable.

*       *       *

For the reasons set forth above, the Parties respectfully submit that the proposed settlement complies with the Second Circuit's and this District's standards and procedures for settlement approval, and the Parties respectfully request that the settlement and the related attorneys' fees and costs be approved by the Court.

We thank the Court for its time and consideration in this matter.

Sincerely,

Armando A. Ortiz

Enclosure
CC:    All counsel of record (via CM/ECF)

---

[8] Contemporaneous time records can be made available to the Court upon request.

The Court is in receipt of the parties' settlement agreement.  The Court has reviewed the proposal in light of *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015), and *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), and finds that the settlement is fair.

The Court notes that the attorney's fees were calculated using the percentage method and represent one third of the total settlement amount.  While the Court finds those fees to be reasonable, the Court does not make any finding as to the reasonableness of counsel's hourly rate or as to the reasonableness of any particular hours billed for work on this case.

Accordingly, the settlement is approved,  the case is dismissed with prejudice, and, pursuant to the parties' joint request, the Court retains jurisdiction over the settlement for purposes of enforcement. The Clerk of Court is respectfully directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.
Date: March 5, 2021

      New York, New York

                                           JOHN P. CRONAN
                                        United States District Judge